## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TAKEIYA WRIGHT                          :
                                        :
            **Plaintiff**               :
      v.                                :
                                        :
TERRY CACCIUTTI, et al.                 :        **3:12-CV-1682**
                                        :        **(JUDGE MARIANI)**
            **Defendants**              :
      v.                                :
                                        :
KURT CARTER                             :
                                        :
            **Additional Defendant**    :

## MEMORANDUM OPINION

### I. Introduction

A jury trial was held in the above-captioned case in late July, 2014, which concluded

in a verdict holding Defendants John Cacciutti and Terry Cacciutti liable to Plaintiff Takeiya

Wright for negligence. Now before the Court are Post-Trial Motions by Defendants

Cacciutti, pursuant to Federal Rules of Civil Procedure 50(b), 59(a) and 59(e) for judgment

as a matter of law, to alter or amend judgment, a new trial, a new trial on damages, or

remittitur of the excessive verdict. (Doc. 164). For the reasons set forth below, the Court

will grant in part and deny in part the moving defendants' motions.

### II. Factual Background and Procedural History

Because the factual background of this case is intimately familiar to all parties and

has been discussed at length by this Court before, (*see generally*, Mem. Op. Denying

Summ. J. to Cacciuttis, Doc. 80), a detailed discussion of the facts of the case is unnecessary here. Briefly, for purposes relevant to the present motion, the lawsuit involves allegations that Defendants John Cacciutti and Terry Cacciutti were negligent in removing snow from their rental property and were also vicariously liable for the actions of the other defendants due to any failure on the part of these individuals to remove snow from the property.

A jury trial was held from July 28, 2014 through July 31, 2014. After deliberation, the jury found that the Cacciuttis were negligent, that this negligence was the factual cause of the harm caused to Plaintiff Wright, and that neither co-defendant SCI Janitorial Services nor Plaintiff was negligent. (*See* Jury Verdict, Doc. 156). The jury then proceeded to assess a total $325,000.00 in damages against the Cacciuttis, comprised of $125,000.00 in past medical expenses, $35,000.00 in future medical expenses, $50,000.00 in past lost earnings, $40,000.00 in future lost earning capacity, and $75,000.00 in past, present, and future pain and suffering, embarrassment and humiliation, and loss of enjoyment of life. The jury declined to award Plaintiff any damages for disfigurement. (*Id.* at 5). The jury also found that an agreement existed between the Cacciuttis and Third Party Defendant Kurt Carter, but that the language of the indemnification clause was not valid and enforceable against Carter and did not express the parties' intentions in clear and unequivocal language. (*Id.* at 6). No one has challenged the jury's determination as to the Third Party Defendant.

After the entry of judgment, Defendants Cacciutti timely filed the instant Federal Rule 50(b) Motion for Judgment as a Matter of Law or, in the Alternative, for a Molded or Amended Verdict or New Trial pursuant to Federal Rule 59 (Doc. 164), having properly moved for Judgment as a Matter of Law under Rule 50(a) at trial, and the Court having denied the relevant portion of that Motion and submitted the questions to the jury. (*See* Trial Tr., July 29, 2014, at 116-122). Specifically, the moving defendants now argue that the evidence presented at trial was insufficient to support the jury's award of damages for past medical expenses, future medical expenses, past lost earnings, and future lost earning capacity. Defendants also assert that the Court erred in refusing to preclude the testimony of Dr. Sean Lager,[1] in not including certain instructions in the jury charge, and in omitting former co-defendant Paul Benesz from the verdict sheet submitted to the jury.

## III. Standard of Review

### A. Motion for Judgment as a Matter of Law

Under Federal Rule of Civil Procedure 50(a),

[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
    (A) resolve the issue against the party; and
    (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 50(a)(1). Under Rule 50(b),

---

[1] The Court granted in part and denied in part Defendants' motion in limine to preclude certain aspects of Dr. Lager's testimony (Doc. 132). (*See* Trial Tr., July 28, 2014, at 18-28).

[i]f the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged—the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59.

Fed. R. Civ. P. 50(b).

The Court can only address issues raised in a 50(b) Motion which were first raised in the 50(a) Motion. *See Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1172 (3d Cir. 1993) ("In order to preserve an issue for judgment pursuant to Rule 50(b), the moving party must timely move for judgment as a matter of law at the close of the nonmovant's case, pursuant to Rule 50(a), and specify the grounds for that motion."). "Absent a motion in accordance with Federal Rule of Civil Procedure 50(a), judicial reexamination of the evidence abridges [a party's] right to a trial by jury." *Id.* at 1173 (quoting *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 183 (3d Cir. 1992)).

However, if the issues raised in a 50(b) Motion have been properly preserved, the Court may grant a motion for judgment as a matter of law if,

viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability. In determining whether the evidence is sufficient to sustain liability, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version.

*Id.* at 1166 (internal citations omitted). In doing so, "the court should review the record as a whole, [but] must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151, 120 S.Ct. 2097, 147 L.Ed. 2d 105 (2000).

"[J]udgment as a matter of law should be granted sparingly . . . ." *CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc.*, 357 F.3d 375, 383 (3d Cir. 2004). Nonetheless, "more than a scintilla of evidence is needed to sustain a verdict. Accordingly, 'we will grant judgment as a matter of law where the record is critically deficient of the minimum quantum of evidence in support of the verdict.'" *Id.* (quoting *Johnson v. Campbell*, 332 F.3d 199, 204 (3d Cir. 2003)) (internal alterations omitted).

### B. Motion for a New Trial or to Alter or Amend a Judgment

In addition to a motion for judgment as a matter of law, a losing party may also move for a new trial or to alter or amend a judgment pursuant to Federal Rule of Civil Procedure 59. *See* Fed. R. Civ. P. 50(b) (allowing Rule 50(b) movant to "include an alternative or joint request for a new trial under Rule 59").

"The court may, on motion, grant a new trial on all or some of the issues—and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." Fed. R. Civ. P. 59(a)(1)(A).

The Court may grant a new trial "purely on a question of law;" or to correct a previous ruling "on a matter that initially rested within the discretion of the court, e.g.

evidentiary rulings or prejudicial statements made by counsel;" or "because [the Court]

believes the jury's decision is against the weight of the evidence;" among other grounds.

*Klein v. Hollings*, 992 F.2d 1285, 1289-1290 (3d Cir. 1993) (internal citations omitted).

While the Court has wide discretion to order a new trial to correct rulings that initially rested

in its discretion, it has relatively narrow discretion to overturn a verdict on the grounds that

the verdict is against the weight of the evidence. *Id.* This is because

> where no undesirable or pernicious element has occurred or been introduced
> into the trial and the trial judge nonetheless grants a new trial on the ground
> that the verdict was against the weight of the evidence, the trial judge in
> negating the jury's verdict has, to some extent at least, substituted his
> judgment of the facts and the credibility of the witnesses for that of the jury.
> Such an action effects a denigration of the jury system and to the extent that
> new trials are granted the judge takes over, if he does not usurp, the prime
> function of the jury as the trier of the facts.

*Lind v. Schenley Indus., Inc.*, 278 F.2d 79, 90 (3d Cir. 1960).

> Accordingly, the district court ought to grant a new trial on the basis that the
> verdict was against the weight of the evidence only where a miscarriage of
> justice would result if the verdict were to stand. Where the subject matter of
> the litigation is simple and within a layman's understanding, the district court
> is given less freedom to scrutinize the jury's verdict than in a case that deals
> with complex factual determinations . . . .

*Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1352 (3d Cir. 1991) (internal citations and

quotations omitted).

The Court may also alter or amend a judgment pursuant to Fed. R. Civ. P. 59(e),

otherwise known as a motion for reconsideration. *See Keifer v. Reinhart Foodservices,*

*LLC.* ("*Keifer II*"), 563 Fed.Appx. 112, 114 (3d Cir. 2014). A motion to alter or amend "must

rely on one of three major grounds: (1) an intervening change in controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct clear error of law or prevent manifest injustice." *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995) (internal quotation marks and brackets omitted). Thus, when a jury errs as a matter of law, a Court may rectify this error through a Rule 59(e) motion. *Keifer II*, 563 Fed.Appx. at 115; *see also United States v. Fiorelli*, 337 F.3d 282, 288 (3d Cir. 2003) ("A motion under Rule 59(e) is a 'device to relitigate the original issue' decided by the district court, and used to allege legal error") (quoting *Smith v. Evans*, 853 F.2d 155, 158-159 (3d Cir. 1988)). However, "motions for reconsideration should not be used to put forward arguments which the movant . . . could have made but neglected to make before judgment." *United States v. Jasin*, 292 F. Supp. 2d 670, 677 (E.D. Pa. 2003) (internal quotation marks and alterations omitted) (quoting *Reich v. Compton*, 834 F. Supp. 2d 753, 755 (E.D. Pa. 1993) *rev'd in part and aff'd in part on other grounds*, 57 F.3d 270 (3d Cir. 1995)). Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should only be granted sparingly. *Continental Cas. Co. v. Diversified Indus., Inc.*, 884 F.Supp. 937, 943 (E.D.Pa. 1995) (citing *Rottmund v. Continental Assurance Co.*, 813 F.Supp. 1104, 1107 (E.D.Pa. 1992)).

## IV. Analysis

### A. Motion for Judgment as a Matter of Law or to Alter or Amend Judgment

The moving defendants first request that judgment be entered in their favor pursuant to Fed. R. Civ. P. 50(b) or that the verdict be molded pursuant to Fed. R. Civ. P. 59(e) with respect to the jury's award of damages for past medical expenses, future medical expenses, past lost earnings, and future lost earning capacity. (Doc. 164, ¶¶ 7-8). Defendants contend that the evidence presented to the jury was legally insufficient for a reasonable jury to find for Plaintiff as to each of these elements of damages. (*Id.* at ¶ 9).

Preliminarily, the Court notes that Defendants' Rule 50(b) motion easily fails as a matter of law. At the close of Plaintiff's case, Defendants moved pursuant to Rule 50(a) to dismiss Plaintiff's breach of contract claim and Plaintiff's vicarious liability claim. (Trial Tr., July 29, 2014, at 116-122). The Court granted Defendants' motion with respect to Plaintiff's breach of contract claim and granted the motion for judgment as a matter of law with respect to the vicarious liability claim alleged against them by virtue of Defendant Benesz's conduct, but denied dismissing the entirety of the vicarious liability claim due to evidence of a relationship between the Cacciuttis and SCI Janitorial Services sufficient to allow the claim to proceed to a jury. (*Id.*). The 50(b) post-trial motion now pending before the Court raises no issue previously presented in Defendants' 50(a) motion and therefore cannot be granted on the basis of a 50(b) motion. *See Lightning Lube*, 4 F.3d at 1172 ("In order to preserve an issue for judgment pursuant to Rule 50(b), the moving party must timely move for judgment

8

as a matter of law at the close of the nonmovant's case, pursuant to Rule 50(a), and specify the grounds for that motion."). Even Defendants' brief in support of their motion fails to specifically address any basis for their Rule 50(b) motion (see Doc. 165), and the Cacciuttis' reply brief implicitly concedes that their claims are not grounded in Rule 50(b), but rather that their arguments are made in support of their requests to alter or amend the verdict or receive a new trial (see Doc. 172).

The moving defendants' post-trial motion is therefore more appropriately evaluated pursuant to Rule 59(e). Defendants do not argue that their motion should be granted based on an intervening change in controlling law or the availability of new evidence not previously available; but rather presumably to correct a clear error of law or prevent manifest injustice.

### 1. Plaintiff's Medical Expenses

#### a. Past and Future Medical Expenses

"It is well-settled that a plaintiff in a personal injury action seeking damages for the cost of medical services provided to [her] as a result of a tortfeasor's wrongdoing is entitled to recover the reasonable value of those medical services." Kashner v. Geisinger Clinic, 638 A.2d 980, 983 (Pa. Super. Ct. 1994); see also Moorhead v. Crozer Chester Med. Ctr., 765 A.2d 786, 789 (Pa. 2001), abrogated on other grounds by Northbrook Life. Ins. Co. v. Com., 949 A.2d 333 (Pa. 2008) ("Pennsylvania case law allows a plaintiff to recover the reasonable value of medical services."). While the amount that was actually paid for a plaintiff's medical services may be relevant in determining the reasonable value of those

services, the trier of fact should also look to other factors such as the amount billed to the plaintiff, and the relative market value of those services in determining reasonableness. *Kashner*, 638 A.2d at 983.

Here, there is no evidence to support a finding as to the reasonable value of Plaintiff's medical expenses, past or future, and the record is completely devoid of any evidence regarding the actual costs of Wright's medical treatment. Therefore, the jury's award for all medical services and treatment cannot be upheld.

With respect to past medical expenses, Plaintiff failed to put forth the necessary evidence to support the jury's award of $125,000.00. To prove special medical damages in a personal injury action, a plaintiff must establish (1) that the medical services were rendered; (2) the reasonable charges for those medical services; (3) that the services rendered were necessary; and (4) that the services rendered were related to the injury. *Phillips v. Gerhart*, 801 A.2d 568, 576 (Pa. Super. 2002) (citing *Ratay v. Liu*, 260 A.2d 484, 486 (Pa. Super. Ct. 1969)).

Here, the record supports a finding that medical services were rendered and that at least some of the services rendered were related to the injury suffered as a result of Plaintiff's slip and fall on January 30, 2011, and Defendants do not argue that these factors were not established. Specifically, both Plaintiff's expert, Dr. Sean Lager, and Defendants' expert, Dr. Michael Banas, testified that on the same day that Plaintiff fell, she was taken to urgent care and then transferred to Wayne Memorial Hospital where she underwent surgery

for a bimalleolar ankle fracture. (Trial Tr., July 29, 2014, at 13; Dep. of Michael Banas,[2] at

14, 20). Dr. Banas testified that the fracture and surgery were both event related. (Dep. of

Banas, at 23, 37). Several x-rays were taken at Wayne Memorial, which were shown to the

jury and submitted into evidence (Pl.'s Ex. 22). Dr. Lager's report, part of which was read to

the jury, explained that "claimant underwent physical therapy for her right ankle CEPP

Innovation Sports and Physical Rehabilitation from February 2011 to August 2-11." (Trial

Tr., July 29, 2014, at 42). Dr. Banas also specifically referenced several appointments that

Plaintiff had with Dr. Mattheou and Dr. Graziano. (Dep. of Banas, at 22-23). Additionally,

Dr. Banas recommended that Wright maintain a "generalized home physical therapy and

conditioning program." (Id. at 25).

However, Plaintiff not only failed to offer evidence of the actual cost of any past

medical expenses, but she also offered no proof of the reasonableness of her past medical

expenses. Indeed, it would be almost impossible to establish the reasonableness of her bills

in the absence of any numerical values. While a physician may testify as to the

reasonableness of medical charges for services rendered by other doctors and hospitals,

Ratay, 260 A.2d at 486, here, plaintiff's counsel did not ask Dr. Lager any questions relating

to the reasonableness of the medical charges incurred, see, e.g., id. at 485 (finding

sufficient evidence of both reasonableness and necessity where a physician testified that

"all the charges appearing on the . . . exhibits were reasonable and that all the services

---

[2] Dr. Banas' videotaped deposition was shown to the jury on July 30, 2014. (See Trial Tr., July 30, 2014, at 102-103).

rendered therefor were necessitated" as a result of the accident) nor did Plaintiff provide any

other testimony or evidence on this issue. Thus, Plaintiff has put forth no evidence or

testimony to meet the second factor necessary to obtain an award for past medical

expenses, i.e. to establish the reasonableness of any past medical bills. Nonetheless, while

the jury's award of past medical expenses in the amount of $125,000.00 was purely

speculative and contrary to law, as discussed below, Defendants waived their objection to

this category of damages being submitted to the jury and the award cannot be stricken

pursuant to Rule 59(e).

With respect to the jury's award of $35,000.00 for future medical expenses, Plaintiff

once again did not put forth the requisite evidence to support this finding.

> "In the context of a claim for future medical expenses, the movant must prove,
> by expert testimony, not only that future medical expenses will be incurred,
> but also the reasonable estimated cost of such services." *Mendralla v.
> Weaver Corp.,* 703 A.2d 480, 485 (Pa.Super.Ct.1997) (citations omitted).
> "Because the estimated cost of future medical services is not within the
> layperson's general knowledge, the requirement of such testimony eliminates
> the prospect that the jury's award will be speculative." *Id.*

*Keifer II,* 563 Fed.Appx. at 116. The plaintiff will generally not be required to produce expert

testimony with respect to the cost of future medical care when she has introduced evidence

of the cost of her past medical care. However, not only has Plaintiff failed to do so as

discussed above, even under this exception, "the plaintiff must introduce evidence of the

reasonable estimated cost of such services to preclude the jury from making an award

12

based upon speculation or guesswork." *Keifer v. Reinhart Foodservice, LLC ("Keifer I")*, 2013 WL 2558004, at \*14 (W.D. Pa. 2013), *aff'd, Keifer II, supra.*

In the instant case, the Court need not determine whether the plaintiff provided the jury with a reasonable basis to conclude that future medical expenses would be incurred. Plaintiff failed to set forth any evidence which may have allowed the jury to specifically determine the kind and extent of medical care Plaintiff may need, other than Dr. Lager's opinion that "she may require another surgical procedure to remove the hardware in her ankle" (Trial Tr., July 29, 2014, at 45), and in particular, Plaintiff presented no evidence as to the costs of any future medical treatment, including a possible surgery.

Even if Plaintiff had put forth sufficient evidence to support an award for past medical expenses, neither Dr. Lager nor Dr. Banas testified that the frequency, duration or expense of the treatment plaintiff received in the past was the same or similar to that which may be expected in the future. Plaintiff's expert specifically testified that nothing in his records indicated that Plaintiff was planning any additional care. (*See* Dr. Lager's Trial Tr., July 29, 2014, at 44). At best, Dr. Lager briefly testified that Plaintiff may need surgery in the future to remove the hardware in her ankle. In fact, even Plaintiff testified that the physical therapy for her ankle ended in August, 2012, at which point, although she had ongoing pain, stiffness, swelling, and tingling, she just did home exercises suggested by the physical therapist. (Trial Tr., July 29, 2014, at 75-76). She further admitted that she had not been to

13

a doctor or physical therapist or any other medical provider, other than the two doctors hired

by the parties to conduct IMEs, since August, 2012. (*Id.* at 76-77, 96).

The type of medical care, including the necessity for physical therapy, surgery, or

regular doctor's visits as a result of Plaintiff's injury are not matters of common knowledge,

and the limited testimony at trial with respect to Wright's past treatments was not sufficient

for a layperson to reasonably infer what type of future treatment may be necessary or the

cost of such treatment. See *Pratt v. Stein*, 444 A.2d 674, 697-698 (Pa. Super. Ct. 1982)

(finding that "the jury could reasonably have inferred that [plaintiff] would require chiropractic

treatment with the same frequency as he had in the past" where the jury awarded future

medical expenses for chiropractic treatment for back spasms caused by plaintiff's constant

use of canes where, because of the permanent nature of injury, plaintiff would necessarily

need to continue to use crutches or canes in the future and plaintiff's past treatment

consisted of numerous visits to the chiropractor over a four-year period at a fixed cost per

visit); see also, *Baccare v. Mennella*, 369 A.2d 806, 808 (Pa. Super. Ct. 1976) ("[T]he

[plaintiff] testified to the pain he suffered in his lower back up to the time of trial and his

doctor testified to the medical reasons the pain persisted. However, when asked to give a

prognosis for the future, the doctor was unable to do so, nor was he able to estimate

medical expenses or predict whether future hospitalizations would be required. He testified

that it was his experience in cases of low back strain that recovery could come any day or

never come at all and he could not predict what the future would bring in the appellant's

case . . . Testimony such as this gives the jury no basis on which to assess the probability of [plaintiff's] disability continuing for an appreciable duration or ceasing immediately.").

In the absence of sufficient evidence as to the extent and type of future medical care that Plaintiff may need, the complete absence of the services' future cost or reasonableness, as well as the lack of any past medical costs upon which a jury could infer the costs of any future medical services, Plaintiff has woefully failed to meet her burden to provide the jury with any kind of information upon which the jury could award damages absent wild speculation. Therefore, the jury's award of $35,000.00 for future medical expenses will be stricken.

*b. Waiver of Objections as to Past and Future Medical Expenses*

In opposition to Defendants' motion, Plaintiff argues that Defendants waived their right to post-trial and appellate review of the jury's award for past medical expenses and future medical expenses by consenting to the Court's instruction to the jury following a jury question during deliberation. (Doc. 166, at 10-11, 13-18). By conflating the categories of past medical expenses and future medical expenses into one argument, Plaintiff misrepresents what was actually said by Defendants' counsel and the Court. Plaintiff is correct that Defendants never objected to a category of past medical expenses being submitted to the jury and waived any objection to the jury's award for this category, but Defendants did clearly place an objection on the record to the category of future medical expenses.

At issue are the events at the charge conference and, later, in court after the jury returned with a question during their deliberations. At the charge conference, counsel for Defendants expressed concern with parts B and D in Question 7[3] of the special verdict sheet, which listed the categories of damages for future medical expenses and future lost earning capacity respectively (see Trial Tr., July 31, 2014, at 22-23). In response, the Court offered to add a sentence to the instructions in Question 7 indicating that the fact that each of the categories was listed did not mean that the jury must award damages for each category. Defendants' counsel responded "Your Honor, I understand your thoughts on the compromise, I still think that it leads to the potential of the jury speculating as to *those* damages [s]o I would rest on my objection and allow Your Honor to do what he sees fit." (*Id.* at 25) (italics added). Counsel therefore properly placed his objection on the record as to the categories of damages for future medical expenses and future lost earning capacity and his position was clear on this issue as to "those" categories.

During their deliberations, the jury sent a question to the Court requesting "additional guidance on parts A and C" of Question 7 of the special verdict sheet. Question 7 asked the jury to itemize the amount of damages sustained by Plaintiff, and parts A and C related to past medical expenses and past lost earnings. The Court read the question to counsel for all parties and engaged in the following exchange with counsel for Defendants:

---

[3] Question 7 on the special verdict sheet asked the jury to "[i]temize the amount of damages sustained by Takeiya Wright as a result of this accident . . ." and included categories for "past medical expenses"; "future medical expenses"; "past lost earnings"; "future lost earning capacity"; "past, present, and future pain and suffering, embarrassment and humiliation, and loss of enjoyment of life"; and "disfigurement."

16

THE COURT: . . . All right, this is what I've proposed to tell them. You must rely on your memory of the evidence presented in this case. This includes both the testimony of witnesses and the exhibits entered into evidence. As noted in the instructions for Question 7, the fact that a category is listed below does not mean that you must award damages, with respect to that category, if you find the evidence does not support such a claim. That's what I propose to tell them. Any objection?

. . . .

MR. McPARTLAND: I have no problem with your instruction. All you're doing is re-writing the instruction, and quite frankly, I think it's appropriate, since they have not been given a number for past medical bills, so I have no objection.

(Trial Tr., July 31, 2014, at 84-85). Defense counsel's lack of objection to the Court's response related to the categories of past medical expenses and past lost earnings. Despite Plaintiff's contention, Defendants' response did not pertain to future medical expenses and therefore was not a waiver of Defendants' prior objection to that category.

Thus, while Defendants placed a clear objection on the record to the Court's instructions with respect to future medical expenses, this objection did not encompass past medical expenses. Defendants' failure to raise an objection at the charge conference to past medical expenses was not preceded by any objection by Defendants as to this category at any time during the trial. Therefore, Defendants did not waive their objection as to future medical expenses, but Defendants' objection as to the category of past medical expenses on the special verdict sheet was never properly asserted on the record[4] and cannot now be raised in this post-trial motion.[5]

---

[4] At best, after hearing the jury's question to the Court, Defendants' counsel stated:

17

## 2. Past Lost Earnings and Future Lost Earning Capacity

Despite Defendants' request that the Court strike the jury's award of $50,000 in past lost earnings, Defendants provide no case law or substantive argument in support of their position. Instead, Defendants rely on the Third Circuit's opinion in *Keifer*, which addressed the plaintiff's burden in establishing future lost earnings, not past lost earnings, and indeed, Defendants' arguments focus almost entirely on alleged errors in the jury's award for future lost earning capacity.[6]

Pennsylvania courts have found that testimony by a plaintiff regarding his or her loss of wages is sufficient proof to allow a judge to instruct a jury on past lost earnings. *See e.g., Pratt*, 444 A.2d at 696. Therefore, at issue is whether there was sufficient evidence for the jury to find that Plaintiff may have lost $50,000.00 in wages between January 30, 2011 and the commencement of trial on July 28, 2014, i.e. an estimated 42 months or 168 weeks.

---

My request would be to strike the line item - I guess maybe we're past that point - but if we're not going to do this, I think the jury should be instructed that damages need to be proven by a preponderance of the evidence, they can't be based on speculation, must be based on evidence of record, because, at this point, all we heard is that there's some outstanding medical lien, without any doctor or other person saying, Here's what the costs are.

(Trial Tr., July 31, 2014, at 82). While this comment clearly indicates that Defense counsel had concerns regarding the past medical expenses category on the verdict sheet, this statement alone does not constitute a proper objection for the sake of the current post-trial motion.

[5] As evidenced by Defendants' motions in limine and motions during trial to preclude Plaintiff from referencing her medical lien and to preclude certain testimony by Dr. Lager, Defendants knew that the jury would be presented with a category for past medical expenses. As Defendants properly note, Plaintiff presented no evidence to support such an award for damages. The issue therefore would have been easily resolved had counsel made a Rule 50(a) motion at the close of Plaintiff's case-in-chief.

[6] Further hurting Defendants' argument is the absence of any objection on the part of defense counsel at the charge conference to the category for past lost earnings on the special verdict sheet, and in fact, defense counsel's admission during this conference that the plaintiff's testimony at trial "supports the past lost wage claim." (Trial Tr., July 31, 2014, at 22-24).

Here, Plaintiff testified that she was not able to return to her job at Foot Locker following the

slip and fall in January, 2011. (Trial Tr., July 29, 2014, at 80). Plaintiff testified that due to

her injury, she had to quit her job at Foot Locker because she "would have to climb up on

ladders and things of that nature", tasks she no longer felt she could perform. (Id. at 69-70).

Wright also stated that she worked five hours a day, three to four days a week, which

amounted to approximately 20 hours a week, and "would bring home [$]250, maybe [$]300"

a week at this job, depending on how much she earned in commission. (Id. at 69).

Crediting Plaintiff's testimony, a jury could calculate that Wright lost between $42,000.00

and $50,400.00 due to her inability to continue working at Foot Locker.[7] Thus, there was a

reasonable basis for the jury's award of $50,000.00 for past lost wages and Defendants'

motion to strike this award will be denied.[8]

> With respect to awards for future lost earnings and lost earning capacity,

> It is settled Pennsylvania law that where there is evidence that a plaintiff has suffered disabling permanent injury, it is a jury question as to whether such injury will shorten his economic horizon and thereby result in a future loss of earning power. Although expert testimony is required to prove the permanency of a plaintiff's injury, it is not required to prove loss of earning capacity. There the plaintiff's own testimony may be sufficient.

> For the amount of earnings lost due to the injury, if a plaintiff proves that his or her ability to perform the duties of employment has been impaired, a jury

---

[7] Over the course of 168 weeks, if Plaintiff was making $250 per week, she would have lost $42,000.00 (168 x 250 = 42,000.00). If a jury concluded that Plaintiff would have made $300 per week over the course of 168 weeks, this amounts to a total loss of $50,400.00 (168 x 300 = 50,400.00).

[8] Although Plaintiff also worked as a special education paraprofessional, she testified that while the school did have to make accommodations for her, she was able to use her vacation and sick days. (Trial Tr., July 29, 2014, at 71, 98).

19

can award damages for loss of future earning power even though the loss has not been translated by evidence into a precise monetary figure. It is sufficient for a plaintiff to provide information to enable the jury to estimate damages without engaging in speculation.

*Keifer II*, 563 Fed.Appx. at 115 (internal citations and quotation marks omitted). Under Pennsylvania law, the "loss of earning capacity refers to the disadvantage a plaintiff suffers in competing with uninjured persons in the employment market. The impairment need not necessarily be reflected in a loss of earnings, and, indeed, there may be a recovery even if . . . the plaintiff received higher earnings after an injury than before." *Heckman v. Fed. Press Co.,* 587 F.2d 612, 618 (3d Cir. 1978). Furthermore, generally the "mere uncertainty as to the amount of damages will not bar recovery where it is clear that damages were the certain result of the defendant's conduct." *Pugh v. Holmes,* 405 A.2d 897, 909-910 (Pa. 1979).

Thus, in determining whether sufficient evidence was presented to a jury with respect to damages for future lost wages, a Court should consider "whether the evidence provided the jury a reasonable basis to find (1) the existence of a permanent or ongoing injury caused by the defendant; (2) the injury's effect on the plaintiff's earning capacity; and (3) the amount of earnings lost due to the injury." *Keifer I,* 2013 WL 2558004, at *5 (collecting cases).

In their post-trial motions, moving defendants argue that Plaintiff has presented no expert testimony demonstrating that she suffered a disabling permanent injury; that she has failed to offer sufficient evidence demonstrating that her ability to perform the duties of

20

employment has been impaired; and that she did not provide the jury with sufficient information to enable to jury to estimate damages without engaging in speculation. (Doc. 165, at 9-10).

With respect to the existence of a permanent or ongoing injury, Defendants' argument is without merit. It is undisputed that Plaintiff's injury was caused by her slip and fall on the Cacciuttis' property, and Defendants do not dispute that any continuing pain from Plaintiff's ankle is the result this fall. Therefore, the first issue is only the extent and permanency of Plaintiff's injury.

Dr. Lager testified that, over two years after Plaintiff's injury, she lacked "10 to 15 degrees on the right [plantar flexion] compared to the left", "on inversion [Plaintiff's ankle] lacked five degrees on the right compared to the left; eversion, [Plaintiff's ankle] lacked about 10 degrees compared to the left." (Trial Tr., July 29, 2014, at 30). Dr. Lager also testified that he noted some weakness in Plaintiff's right ankle compared to her left ankle and that Plaintiff was still complaining of weakness and tenderness over the areas where her ankle fractured. (Id. at 31, 34). Plaintiff's expert also stated that "because of her ongoing pain and discomfort she may require another surgical procedure to remove the hardware in her ankle." (Id. at 45).

Even discounting Dr. Lager's testimony as Defendants argue the Court must do, Dr. Banas' testimony as to Plaintiff's injury clearly provided the jury with a reasonable basis to find the existence of a permanent or ongoing injury to her ankle due to Plaintiff's slip and fall

on the Cacciuttis' property. Dr. Banas stated that Plaintiff has a permanent sequelae, which

he defined as "a residual of [an] event" such as Plaintiff's ankle fracture. (Dep. of Banas, at

43-44). The doctor also testified that "with respect to [Plaintiff's] hardware, with regard to

her scars, with regards to her range of motion . . . [s]he's hit a point of maximum

improvement, and I do not believe that she's going to improve above that level." (*Id.* at 49).

Specifically, despite testifying as to the ways that Plaintiff's injuries had healed or improved,

Dr. Banas admitted that his report indicated that Plaintiff was tender over her scar area, that

she had decreased flexibility in her right ankle compared to her left ankle, and that she

complained of pain, swelling, weakness and stiffness. (*Id.* at 15-18, 33). Just because Dr.

Banas stated that he "do[es] not believe [Plaintiff] requires any further operative

intervention" (*id.* at 26), does not mean that he did not provide sufficient testimony for a jury

to conclude that Plaintiff's injuries were ongoing or permanent. While the need for surgery

may imply that an injury is ongoing, it is by no means the only indicator of the permanency

of an injury. Nor can Dr. Banas' statement that Plaintiff's "recovery has been excellent" (*id.*

at 24) necessarily be interpreted to mean that Plaintiff does not have any permanent

injuries, only that, to the extent possible, Plaintiff has recovered well. Similarly, Dr. Banas'

assertion that Plaintiff has "hit a point of maximum improvement" and that he does not

believe that she will improve above that level, indicates that, while Plaintiff has healed in

some respects, she has not, and will not, reach the point where she was prior to the

accident. Therefore, the testimony provided by Dr. Banas alone was sufficient expert testimony as to the permanency of Plaintiff's injuries to support the jury's verdict.

Plaintiff's testimony with respect to her past wages at both Foot Locker and as a Special Education Paraprofessional provided the jury with a basis upon which to estimate her future earnings as well as employment opportunities or job-related activities she may no longer be qualified for or able to perform due to her injuries. In addition to her testimony regarding Foot Locker, which was discussed *supra*, Plaintiff testified that she was and continues to be a Special Education Paraprofessional. (Trial Tr., July 29, 2014, at 68). She testified that in 2011 she was "receiving $19.25 an hour, so approximately, I was making, maybe, I think it was [$] 38[,000]" and that she currently continues to work approximately 37 hours per week. (*Id*. at 71, 97). Plaintiff also established that special accommodations at the school were necessary due to her injuries, which the jury could reasonably believe may have persisted into the future or limited Plaintiff's future job opportunities:

Q. Isn't it true that your school made certain accommodations for you because you were not able to perform your job duties?

A. They did.

Q. Didn't they allow you to come in a different entrance because you weren't able to walk up some of the stairs?

A. I was able to, and I had access of the elevator.

Q. That's not something that they typically allow for regular teachers and teachers aide's, right?

A. No.

23

Q. So you had limited job restrictions that you were not able to perform, and the school actually made those accommodations for you, right?

A. Yes, and usually I do lunch duty, so that's standing on my feet for 35 minutes, and I was accommodated for that, as well.

Q. So you explained the situation to your employer, they realized the situation, said they had to make accommodations for your physical problems, isn't that right?

A. Yes, and I also, at my job, I have to wear shoes, and I was able to wear sneakers.

Q. They also allowed you to wear sneakers because you weren't able to wear shoes?

A. Yes.

Q. Did they also allow you to stay seated a lot more often than if this didn't happen?

A. Yes, they actually provided me with a rolling chair.

Q. Explain to us what you mean by that?

A. Just a chair with wheels, so I was able to get to some of the kids that needed assistance.

(*Id.* at 106-107).

Because expert testimony is not required to prove loss of earning capacity and the plaintiff's own testimony may be sufficient to establish this element of her claim, Plaintiff's testimony provided a sufficient basis for the jury's award. Although Plaintiff did not establish the precise amount of her damages, the jury was entitled to consider "all the facts and circumstances of the case, having any tendency to show damages, or their probable

amount[] so as to enable them to make the most intelligible and probable estimate which the nature of the case will permit." *Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 564, 51 S.Ct. 248, 75 L.Ed. 544 (1931). Here, Dr. Lager and Dr. Banas' expert testimony in conjunction with Plaintiff's testimony with respect to her past wages and current wages are sufficient to allow a reasonable jury to believe that Plaintiff suffered a permanent injury, that this injury, which occurred when she was 31 years old, will "shorten [her] economic horizon", and to enable that jury to estimate her damages without engaging in speculation. Therefore, Defendants' motion as to the jury's award of future lost earning capacity will be denied.

In sum, Defendants' post-trial motion with respect to the award for past lost earnings in the amount of $50,000.00 and future lost earning capacity of $40,000.00 will be denied. The Court will grant Defendants' motion as to the jury's award of $35,000.00 in future medical expenses. As further explained below, while Defendants waived any objection to the jury's award of $125,000.00 in past medical expenses, due to the complete absence of evidence to support this award and its therefore purely speculative nature, the Court will grant remittitur solely as to the award for this category.

## B. Motion for a New Trial

Alternatively, the moving defendants request that the Court grant them a new trial pursuant to Fed. R. Civ. P. 59(a) based on a number of alleged prejudicial errors of law and/or abuses of its discretion. These errors and/or abuses include: (1) submitting a verdict

sheet to the jury "that contained an itemized list of damages including past medical

expenses, future medical expenses, past lost earnings, and future lost earning capacity

where there [sic] these categories of damages were not supported by sufficient evidence

and were otherwise against the weight of the evidence"; (2) denying "in part Moving

Defendants' motion in limine to preclude the testimony of Dr. Sean Lager. . . , and

permit[ing] Dr. Lager to testify about the possibility of future medical care (including possible

hardware removal in the future), where his opinions were not offered with the requisite

degree of medical certainty as required by Pennsylvania law; rather, he opined to a

reasonable degree of probability"; (3) permitting "Plaintiff to testify that she received a lien

from her insurance company and that she would be required to pay it back after trial should

she recover"; (4) submitting to the jury a verdict sheet that did not include prior Defendant

Paul Benesz; and (5) declining "to charge the jury in accordance with Moving Defendants'

proposed point for charge No. 1, . . . that the mere happening of an accident does not

establish negligence" and "Moving Defendants' proposed point for charge No. 4 . . . that the

law of Pennsylvania does not impose liability where it is reasonable for the possessor of

land to believe that the allegedly dangerous condition would be obvious to and discoverable

by an invitee such as Plaintiff." (Doc. 164, ¶¶ 10-17).

     The majority of Defendants' arguments have already been addressed above or are

moot in light of the Court's 59(e) rulings. In particular, Defendants' objections with respect

to certain categories of damages being submitted to the jury were addressed by the Court

when altering the verdict. Likewise, the Court need not speak to the propriety of its rulings allowing Dr. Lager to testify in general and Plaintiff to testify regarding her medical lien, both of which relate to medical expenses, given the Court's prior analysis with respect to the jury's awards for medical expenses.[9] However, the Court will address the moving defendants' contentions regarding the omission of Paul Benesz from the verdict sheet,[10] as well as the absence of two of the Cacciuttis' proposed instructions from the jury charge.

Defendants' entire argument with respect to Paul Benesz consists of five sentences, and broadly states, with minimal explanation or case law, that because they had a cross-claim against Benesz and "there was evidence in the record to show that he was responsible for plowing the subject driveway", Benesz should have been included on the verdict sheet. (Doc. 165, at 13). Such an inadequate discussion on this issue provides the Court with scant material to divine Defendants' rationale and seemingly indicates that even the moving defendants do not understand the substance of their argument or truly believe that their contention has merit. Regardless, a review of the events in this case demonstrates that Defendants' motion as to Benesz fails for several reasons.

First, as a threshold matter, Defendants' cross-claim against Benesz is procedurally defective. Pursuant to Fed. R. Civ. P. 5(a)(1)(C), unless otherwise provided under the

---

[9] To the extent that the Court considered Dr. Lager's testimony with respect to the permanency of Plaintiff's injury and its effect on the jury's award of future lost earnings, as noted above, Dr. Banas' testimony alone was sufficient to support the jury's award, and therefore any error in failing to preclude Dr. Lager's testimony would be harmless.

[10] Despite being a named defendant in Plaintiff's action, Benesz never appeared at trial.

Federal Rules of Civil Procedure, "a pleading filed after the original complaint, unless the court orders otherwise under Rule 5(c) because there are numerous defendants" must be served on every party. Rule 5(c), providing that, "if any action involves an unusually large number of defendants, the court *may*, on motion or on its own, order that . . . defendants' pleadings and replies to them need not be served on other defendants . . . " (italics added) offers further support that Defendants were required under the Rules to serve Benesz, as it is clear that absent a Court order, pleadings such as cross-claims must be served on all defendants. Here, the record lacks any indication that Benesz was served by Defendants Cacciutti with their cross-claim against him. The Certificate of Service attached to the "Answer with Affirmative Defenses and Cross-Claim of Defendants, Terry Cacciutti and John Cacciutti to Plaintiff's Amended Complaint" (Doc. 33) states that this document was served upon "all parties", listing these parties as James W. Sutton (attorney for Plaintiff), Daniel D. Stofko (attorney for Warren and Pat Toder) and Michael Troiani (attorney for Plaza Properties). Paul Benesz is not listed among those served, nor was the record ever supplemented with a certificate of service upon him as to this document or with any other evidence that this pleading was in fact served on Benesz. *See Russell v. City of Milwaukee*, 338 F.3d 662, 666 (7th Cir. 2003) ("[T]he absence of a certificate does not require the invalidation of the paper where service is not contested or where the court finds that service was accomplished. *See* 1 James Wm. Moore et al., *Moore's Federal Practice* § 5.20[1] at 5–34 (3d ed.) ('The absence of a certificate of service does not necessarily invalidate or

render ineffective a paper that is served when the fact of service is not contested.'). . . .

Certainly, if a paper filed with the court does not contain the required certificate of service, a court may disregard it. *See, e.g., Boreland v. Butterfly,* No. 92–0458, 1992 WL 20205, at *2 (E.D.Pa. Jan.30, 1992) (instructing pro se plaintiffs that '[i]f any pleading or other paper submitted for filing does not include a certificate of service upon the opposing party or counsel for opposing party, it *may* be disregarded by the Court' (emphasis added)); *Kirsch v. Smith,* 853 F.Supp. 301, 304 (E.D.Wis. 1994) (same). Yet, a court is not obligated to disregard the paper if it finds by other evidence that the paper was in fact served on the parties."). Here, the moving defendants have not provided any evidence that Benesz was in fact served with the cross-claim, and the Court finds no basis in the record to say that the fact of service is uncontested. Therefore, the Cacciuttis' cross-claim against Benesz is procedurally defective and is subject to dismissal on this ground.

While the Court could deny Defendants' motion for a new trial with respect to Benesz on the aforementioned procedural defect alone, we further note that Defendants' arguments fail on the merits as well. In relevant part, Plaintiff's First Amended Complaint (Doc. 30) alleged Negligence (Count III) against each defendant, including Benesz "individually and possibly through an unknown entity", and Negligence - Vicarious Liability (Count IV) against John Cacciutti and Terry Cacciutti for "the negligent acts of their agents, servants, employees, contractors, subcontractors and any other third parties under [the Cacciuttis'] control or management." In response, the Cacciuttis filed an "Answer with Affirmative

Defenses and Cross-Claim" (Doc. 33). The cross-claim, consisting of three sentences, asserted "that the remaining Defendants are solely liable on the underlying causes of action, or are jointly and severally liable with or liable to Defendants John Cacciutti and Terry Cacciutti." (*Id.* at ¶ 49). At trial, it is undisputed that Benesz was dismissed from Plaintiff's case at the request of counsel for the Cacciuttis. (*See generally*, Trial Tr., July 29, 2014, at 119-122; *see also*, Trial Tr., July 29, 2014, at 119 ("MR. McPARTLAND: . . . Your Honor, with regard to Count 5[11] of the amended complaint. It's a claim for vicarious liability against the Cacciuttis, based upon acts of Mr. Paul Benesz and Mr. Toder, actually, the employees of SCI Janitorial. It's the Defendant's position, Mr. Cacciutti's position, that Plaintiff has failed to carry its burden with regard to establishing necessary facts for a vicarious liability claim.")). This Court, in granting the Rule 50(a) motion of the Defendants as to Benesz, noted:

> THE COURT: Well, let's take Mr. Benesz first. I will gladly be corrected by anyone here, but I did not hear a single piece of evidence about Mr. Benesz.
>
> MR. SUTTON: That's correct.
>
> MR. McPARTLAND: That's correct.
>
> THE COURT: Mr. Sutton, I'll give you any opportunity to argue to the contrary, but I don't know how I could allow the claim against Mr. Benesz to continue.
>
> MR. SUTTON: That's fair enough, Judge. I don't have any argument on Mr. Benesz.

---

[11] Counsel for the moving defendants erroneously referred to Plaintiff's vicarious liability claim as "Count 5 of the amended complaint" in moving for the dismissal of this count pursuant to Rule 50(a). In actuality, Plaintiff's vicarious liability claim was Count IV of the first amended complaint.

> THE COURT: So I will grant the motion for judgment as a matter of law, with respect to the claim against Defendant Paul Benesz.

(Trial Tr., July 28, 2014, at 120-121). The "claim" against Benesz referenced by the Court consisted of Count III for personal liability and Count IV for liability to be imposed vicariously on the Cacciuttis. When stating that it "did not hear a single piece of evidence about Mr. Benesz," to which counsel for both the plaintiff and defendants agreed, the Court made a clear determination that Benesz had no liability.

Nonetheless, the moving defendants argue that because they had a cross-claim against Benesz, and offered evidence with respect to his culpability in their case during trial, he should have been put on the verdict sheet for purposes of determining Benesz's liability in the Cacciuttis' action against him. This contention is logically flawed and Defendants' current predicament flows from a tactical decision by Defendants to move under Rule 50(a) to eliminate the vicarious liability claim brought against them by Plaintiff based on Benesz's actions, which had the effect, intended or otherwise, of eliminating the basis for their cross-claim, founded as it was on an assertion that Benesz was answerable for any liability incurred by Defendants by virtue of his "agreement" with the Cacciuttis regarding snow removal. When making a Rule 50(a) motion at the close of Plaintiff's case-in-chief, Defendants requested that Plaintiff's claim for vicarious liability against the Cacciuttis be dismissed because Plaintiff "failed to carry its burden with regard to establishing necessary facts for a vicarious liability claim." (Trial Tr., July 29, 2014, at 119). In support of this argument, Defendants insisted that there was no evidence as to a relationship between the

31

Cacciuttis and the other defendants, including Benesz. The Court agreed as to Benesz, granting the dismissal of the vicarious liability claim with respect to this defendant (see Trial Tr., July 29, 2014, at 120-121; Trial Tr., July 31, 2014, at 12-13), thereby precluding the subsequent shifting of any liability of the Cacciuttis on to Benesz. Because the Cacciuttis cannot be held vicariously responsible for the actions of Benesz, any argument that Benesz is now liable over to the Cacciuttis is untenable. The Cacciuttis cannot have it both ways – they cannot successfully argue, as they did, that they should not be held responsible for Benesz's actions and then claim that Benesz should have been placed on the verdict sheet where Benesz was dismissed at the close of Plaintiff's evidence on their own motion which eliminated any vicarious liability claim against the Cacciuttis based on Benesz's conduct. And because Plaintiff's claim against Benesz individually was also dismissed at the close of Plaintiff's case, no basis existed thereafter by which Benesz could be held liable on the Cacciuttis' cross-claim. Indeed, the Cacciuttis made no request for a separate interrogatory to the jury seeking a determination of liability on their cross-claim. As this Court noted in a statement to which both Plaintiff's and Defendants' counsel agreed, there was not "a single piece of evidence about Mr. Benesz". As a result of not even a scintilla of evidence having been presented against Benesz, he was dismissed entirely from Plaintiff's action.[12]

---

[12] In sum, Defendants give no argument in support of their motion and ignore the fact that they themselves moved to dismiss Benesz on Plaintiff's count alleging that Benesz's conduct presented a claim of vicarious liability against the Cacciuttis and that this was done on the basis of no evidence of an agency relationship. To now say that Benesz should have been on the verdict sheet because the Cacciuttis subsequently presented evidence of a relationship between themselves and Benesz is disingenuous as it

It is well-settled that the dismissal of the original claim or of that claim against a co-party does not require that a prior cross-claim also be dismissed. *See, e.g., Glaziers & Glassworkers Union Local 252 Annuity Fund v. Newbridge Sec., Inc.*, 823 F.Supp. 1188, 1190 (E.D. Pa. 1993) ("[I]f the original claim against the party is dismissed on the merits, any cross-claims previously filed against that party may remain") (citing *Fairview Park Excavating Co. v. Al Monzo Constr. Co.*, 560 F.2d 1122, 1126 (3d Cir. 1977); *Impex Agricultural Commodities v. Leonard Parness Trucking, Corp.*, 582 F.Supp. 260, 262 (D.N.J. 1984)). However, the events at issue present a different and unusual factual situation which requires careful analysis of the general rule quoted in *Glassworkers* above. Specifically, while it is true that the original claim against Benesz (Count III) was dismissed on the merits, it is Count IV, the vicarious liability claim against the Cacciuttis based on Benesz's conduct, which compels this Court's determination that Benesz was properly not placed on the verdict slip. Thus, the Court's ruling does not depart from the rule that the dismissal of the original claim against the party does not require the dismissal of any cross-claim against that party since it is the dismissal of the vicarious liability claim against the Cacciuttis which made the inclusion of Benesz on the verdict slip inappropriate.

It was the Cacciuttis themselves who chose to move to dismiss any vicarious liability claim against them, asserting that Plaintiff "failed to carry its burden with regard to establishing necessary facts for a vicarious liability claim" (Trial Tr., July 29, 2014, at 119).

---

was the moving defendants' actions that eliminated any possibility of the Cacciuttis being held responsible for Benesz's actions.

By successfully doing so, these defendants thereby gained assurance that they could not be held responsible for Benesz's conduct. (*See* Trial Tr., July 31, 2014, at 13) ("MR. McPARTLAND: Well, my Rule 50(a) dealt with the vicarious claim for Mr. Benesz, *based upon my client saying there was no agency relationship.*") (italics added). Because it was the Defendants Cacciutti who successfully argued the lack of any agency relationship between the parties and that they could therefore not be held liable for Benesz's conduct, they cannot now claim that there is an agency relationship and that Benesz is liable to them. Defendants/cross-claim plaintiffs have not cited, and the Court has not found, any case in which the original plaintiff brought a claim against one defendant (Benesz) by which he or she sought to impose vicarious liability on another defendant (the Cacciuttis) which, at the close of plaintiff's evidence, was dismissed on the motion of the original defendant/cross-claim plaintiff (the Cacciuttis) and, in doing so, effectively eliminated the basis of their own cross-claim.

Benesz's omission from the verdict sheet was therefore proper in light of the Cacciuttis' Rule 50(a) motion, the lack of any evidence against Benesz during Plaintiff's case, and the Court's necessary dismissal of Benesz from the action. Further, the only case Defendants cite in support of their argument is not applicable in the current situation.[13] In *Herbert v. Parkview Hospital*, 854 A.2d 1285 (Pa. Super. Ct. 2004) *appeal denied,*

---

[13] Defendants cite, without explanation or pincite, *Herbert v. Parkview Hospital*, 854 A.2d 1285 (Pa. Super. Ct. 2004) for the general proposition that Benesz should have been included on the verdict sheet. However, while *Herbert* did address the inclusion of defendants on the verdict sheet, other than this broad similarity, it is unclear precisely what support Defendants believe this case lends their arguments.

*Herbert v. Parkview Hosp.*, 872 A.2d 173 (Pa. 2005), which did not involve a cross-claim, the administratrix of an estate brought suit against a number of defendants for medical malpractice. Prior to trial, one doctor was dismissed from the case and Plaintiff settled with the hospital and another doctor, entering into joint tort-feasor releases with these two parties. At trial, the sole issue was the liability of the one non-settling doctor, but the names of the settling defendants were also placed on the verdict slip. The jury apportioned liability to all three parties. The plaintiff subsequently filed a post-trial motion challenging the trial court's inclusion of the settling defendants on the verdict slip. The Superior Court affirmed the trial court's decision to leave the settling defendants on the verdict sheet, stating that Plaintiff's challenge "amounts to an assertion that the evidence adduced was insufficient to warrant the jury apportioning any liability to settling defendants", and finding that there was sufficient evidence as to the settling defendants' misconduct to support the jury's verdict. While the defendants at issue in *Herbert* had accepted a portion of liability and settled with Plaintiff prior to trial, they were not dismissed without any finding of liability in favor of Plaintiff as is the case here. *Herbert* has no applicability here.

Finally, Defendants waived their objection to Benesz not being on the special verdict sheet. Pursuant to Federal Rule of Civil Procedure 51(c)(1), "[a] party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection". The failure to do so results in a waiver of the objection on appeal. *See Smith v. Borough of Wilkinsburg*, 147 F.3d 272, 277

(3d Cir. 1998) ("Of course, to preserve an issue for appeal, counsel must state 'distinctly the matter objected to and the grounds of the objection.' Fed. R. Civ. P. 51. Whether that occurs in an objection to the charge, in a request to charge, or otherwise, however, should not be determinative of the waiver issue. *See* 9A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 2553 at 411 (2d ed. 1995) ('The failure to object [at the close of the charge] may be disregarded if the party's position previously has been made clear to the trial judge and it is plain that a further objection would be unavailing. This is a risky business, however, and cautious counsel will renew all objections to the instructions at the close of the charge to be sure that those points are preserved.') (citing cases)."); *see also, Waldorf v. Shuta*, 142 F.3d 601, 629 (3d Cir. 1998) ("As the district court correctly noted, it is clear that a party who fails to object to errors at trial waives the right to complain about them following trial. *See Murray v. Fairbanks Morse*, 610 F.2d 149, 152 (3d Cir. 1979) (holding that '[c]ounsel's failure to object precludes him from seeking a new trial on the grounds of the impropriety of opposing counsel's closing remarks.'")).

During the charge conference, counsel for the Cacciuttis engaged in the following exchange with the Court:

> MR. McPARTLAND: Okay, and my first question, Your Honor, and I may have been mistaken, we talked about it, is Mr. Benesz dismissed from the case?
>
> THE COURT: He's out.
>
> MR. McPARTLAND: Okay. I was unclear on that.

THE COURT: He was dismissed on your Rule 50(a) motion.

MR. McPARTLAND: Well, my Rule 50(a) dealt with the vicarious claim for Mr. Benesz, based upon my client saying there was no agency relationship.

THE COURT: And I granted it because there was absolutely no evidence whatsoever about Paul Benesz, period.

MR. McPARTLAND: Okay.

THE COURT: There's nothing to indicate that there is evidence that could be used to impose liability on Mr. Benesz, either directly or vicariously, or that his conduct would lead to have a vicarious liability of the Cacciuttis, so he's out. I mean, I don't know that there has to be any reference whatsoever to Paul Benesz.

MR. McPARTLAND: Just for the record's sake, my position would be the Cacciuttis have a cross claim against Mr. Benesz, there's testimony –

THE COURT: They do?

MR. McPARTLAND: Yes, I think there's cross claims against everyone. So there's a cross claim for contribution of indemnity against all the Defendants.

THE COURT: Do you recall that?

LAW CLERK: Yes, but I thought they were gone.

THE COURT: I thought it was gone, as well. But go ahead.

MR. McPARTLAND: So my position would be, because my clients and Warren Toder testified that he was responsible for plowing the driveway, I think it's fair for the jury to look at it and say, perhaps, you know, he was negligent in failing to come and plow, per their agreement, to come and plow when he plowed his own driveway.

THE COURT: You mean, Benesz?

MR. McPARTLAND: Yes.

37

THE COURT: The difficulty with that is the same difficulty I had earlier with your willingness or your interest in having someone addressed who has been dismissed. If the person – in my view, I can't ask the jury to assess the liability of a Defendant who has been dismissed. I mean, that's a different ball game, obviously, from SCI, who settled out here and is a joint tort feasor for that reason, but Mr. Benesz, like Plaza Properties, was dismissed, and I don't see any reason for the jury to have to factor in claims that might have been made or were made against this man, when we found already that he is no longer a Defendant so.

MR. McPARTLAND: Thank you, Your Honor. . . .

(Trial Tr., July 31, 2014, at 12-14). Nowhere in this conversation, or at any other time prior to or during the trial, did counsel for the Cacciuttis officially object to Benesz's omission from the special verdict sheet, and the above-quoted exchange is more accurately characterized as Defendants' counsel requesting clarification from the Court. The Cacciuttis' position had not previously been made clear to the Court prior to the charge conference, was not distinctly stated at the conference, nor was it plain that an objection would be unavailing. Therefore, the Cacciuttis waived any objection to Benesz's absence from the special verdict sheet and Defendants' motion fails as a matter of law.[14]

Defendants' arguments are also unavailing with respect to their motion for a new trial due to the Court's omission from the jury charge of two of the Cacciuttis' proposed instructions. "Rule 49 of the Federal Rules of Civil Procedure grants district courts wide

---

[14] Ultimately, Defendants' argument that the Court's "refusal" to include Benesz on the verdict sheet "den[ied] Moving Defendants their right to pursue their cross-claim" (Doc. 165, at 13) is not tenable. The mere listing of Benesz's name on the verdict sheet would not have provided the Cacciuttis with the opportunity to present their cross-claim to the jury for determination. Defendants never requested any other instruction or special verdict question with respect to their cross-claim (Docs. 113, 114). Defendants took no steps to preserve, or pursue, their cross-claim on the verdict sheet prior to the issues being submitted to the jury.

discretion to craft special verdict forms and interrogatories using 'any method that the court

considers appropriate.' *See also* 9B Wright & Miller, *Federal Practice and Procedure* § 2506

(3d ed. 2014). Trial courts 'must give the instructions and explanations necessary to enable

the jury to make its findings on each submitted issue.' Fed.R.Civ.P. 49(a)." *Sprinkle v. AMZ*

*Mfg. Corp.*, 567 Fed.Appx. 163, 164-165 (3d Cir. 2014); *see also United States v. Am.*

*Radiator & Standard Sanitary Corp.*, 433 F.2d 174, 199 (3d Cir. 1970) ("[T]he trial judge has

broad discretion in ruling on points for charge"). A court's refusal to give an instruction

requested by a party is not an abuse of discretion where matters were adequately covered

in the other instructions given to the jury. *Mulholland v. Hoffer*, 2007 WL 1276915, at *8

(E.D. Pa. 2007) (citing *United States v. George,* 625 F.2d 1081, 1087 (3d Cir. 1980);

*Delgrande v. Temple Univ.,* 1997 WL 560176, at *2 (E.D.Pa. 1997), *aff'd,*151 F.3d 1024 (3d

Cir. 1998)).

> A party has no vested interest in any particular form of instructions; the
> language of the charge is for the trial court to determine. If, from the entire
> charge, it appears that the jury has been fairly and adequately instructed, as
> we find it was, then the requirements of the law are satisfied.

*James v. Continental Ins. Co.*, 424 F.2d 1064, 1065 (3d Cir. 1970).

With respect to Defendants' objection to the omission of two of their proposed jury

instructions, Defendants broadly argue that the Court's "refusal to give these charges

resulted in a verdict for Plaintiff based upon an incorrect and erroneous application of

Pennsylvania law." (Doc. 165, at 14). However, this conclusory statement is not

accompanied by any further explanation by Defendants. Rather, while citing two cases

which stand for the general and well-accepted proposition that jury instructions should apprise the jury of the issues and applicable law and not be erroneous, Defendants simply state that "[a]ccordingly, a new trial is warranted." It is thus unclear why in particular Defendants believe that the jury's verdict resulted in "an incorrect and erroneous application of Pennsylvania law."

Defendants' first objection with respect to the jury instructions is the Court's omission of Defendants' requested charge that "the mere happening of an accident does not presumptively establish that one of the parties is negligent." (Doc. 165, at 14; Defs.' Proposed Points for Charge, Doc. 113, at 2). In the charge conference, Defendants' counsel indicated a concern that this charge was necessary "just so [the jury does not] assume that because they're being given these charges and a verdict slip that they have to find someone negligent." (Trial Tr., July 31, 2014, at 15). However, both the jury charge and special verdict sheet made clear that the jury need not assume, or find, that a party was negligent in the case. The first page of the jury charge stated that the jury must determine whether "one of more of the defendants . . . [were] negligent in removing any snow and ice on the leased property . . . ." (Jury Charge, Doc. 153, at 1). The Court later instructed the jury that because Wright claimed she was injured by the negligent conduct of the defendants, she had the burden of proving this claim and again reminded the jury that the first inquiry they must make was whether one or more of the defendants was negligent. (Id. at 8). The instructions then proceeded to explain what constituted negligence and the

40

necessary standard of care that plaintiff must have proved by a preponderance of the

evidence that defendants breached in order to be considered negligent. (*Id.* at 9-11).

Additionally, the first question on the special verdict sheet specifically asked whether any of

the defendants were negligent (Doc. 156, Question 1). The repetitive nature of the Court's

instructions and verdict sheet on this issue, and its use of permissive rather than mandatory

language as to the finding of negligence, clearly indicated to the jury that they were not

required to find one or more of the defendants negligent, and despite Defendants'

contention, the jury was given a sound understanding of Pennsylvania law and its proper

application.

As to Defendants' second objection, the Cacciuttis requested that the Court include

an instruction that "[t]he law of Pennsylvania does not impose liability where it is reasonable

for the possessor of land to believe that the allegedly dangerous condition would be obvious

to and discoverable by an invitee." (Doc. 165, at 14; Doc. 113, at 5). The Court's

instruction, taken directly from the Pennsylvania Suggested Standard Civil Jury Instructions

§ 18.40 (4th ed. Supp. 2013) was as follows:

> An owner of land is required to use reasonable care in the maintenance and
> use of the land, and to protect invitees from foreseeable harm. An owner of
> land is also required to inspect the premises and to discover dangerous
> conditions. An owner of land is liable for harm caused to invitees by a
> condition on the land if:
>
> 1.      the owner knows or by using reasonable care would discover the
> condition, and should realize that it involves an unreasonable risk of harm,
> and

2. the owner should expect that the invitees will not discover or realize the danger, or will fail to protect themselves against it, and

3. the owner fails to use reasonable care to protect the invitees against the danger.

An owner of land is liable to invitees for any harm that the owner should have anticipated, regardless of whether the danger is known or obvious.

(Doc. 153, at 10-11). The Court's instruction makes clear that the Cacciuttis would be liable to Plaintiff if they should have *anticipated* the harm. Instructing the jury that the Cacciuttis, as owners of the premises, were liable to the plaintiff if they should have anticipated the harm that befell plaintiff, taken together with the entire instruction given by the Court, accurately states the applicable Pennsylvania law and did so without omission of any necessary element for the imposition of liability on the Cacciuttis. Further, number 2 of the Court's above-quoted instruction incorporates the very substance of what Defendants complain was not included.[15] While Defendants cite several cases in support of their proposed instruction, pointing to strategically chosen quotations from these cases, Defendants' case law ultimately supports the Court's language and its decision to use the standard provided by the Pennsylvania Suggested Standard Civil Jury Instructions. (*See* Doc. 113, at 5 (citing *Carrender v. Fitterer*, 469 A.2d 120 (Pa. 1983); *Atkins v. Urban* ' *Redevelopment Authority of Pittsburgh*, 414 A.2d 100 (Pa. 1980))). Additionally, the Cacciuttis specifically asked for the instruction that was given by the Court (*see* Doc. 113, at

---

[15] The second part of the instruction read: "An owner of land is liable for harm caused to invitees by a condition on the land if . . . (2) the owner should expect that the invitees will not discover or realize the danger, or will fail to protect themselves against it . . . ."

18) but are now apparently arguing it should have been supplemented with another one of Defendants' proposed instructions. Therefore, there was no error in the Court's instruction to the jury and Defendants have failed to demonstrate how the Court's charge resulted in any incorrect and erroneous application of state law.

For the foregoing reasons, Defendants' motion for a new trial will be denied.

## C. Motion for New Trial on Damages and Motion for Remittitur

Finally, Defendants post-trial motions also include requests for a new trial on the issue of damages and, alternatively, aver that they are entitled to "a substantial remittitur of the jury's verdict." (Doc. 164, ¶¶ 18-20). Both of these motions rely on an identical basis: the insufficiency of the evidence as to past medical expenses, future medical expenses, past lost earnings, and future lost earning capacity. (Id.).

A court may grant a new trial or a remittitur "only if the verdict is so grossly excessive as to shock the judicial conscience." Williams v. Martin Marietta Alumina, Inc., 817 F.2d 1030, 1038 (3d Cir. 1987) (internal quotations omitted). The fact that a court finds an award to be "extremely generous" or "would have found the damages to be considerably less" is not sufficient to shock the conscience. Id. (citing Walters v. Mintec/International, 758 F.2d 73, 80 (3d Cir. 1985)). Rather, Third Circuit decisions have applied a high standard when analyzing what "shocks the judicial conscience." See Walters, 758 F.2d at 81-82 (stating that "a district court should be alert to its responsibility to see that jury awards do not extend beyond all reasonable bounds" where, in the case at issue, there was "no rational basis in

the . . . record for the amount of the jury verdicts" and the award for damages was "purely

speculative"); *Williams*, 817 F.2d at 1041 ("Where . . . the award is grossly excessive in

relation to a plaintiff's injury, the award will not be permitted to stand. [The] award in this

case . . . extends beyond reasonable grounds"); *Spence v. Bd. of Educ. of Christina Sch.*

*Dist.*, 806 F.2d 1198, 1201 (3d Cir. 1986) (affirming the lower court's order of a remittitur

"based on [the district court's] finding that 'the award of damages for emotional distress was

wholly speculative given the limited quality and quantity of proof that plaintiff submitted on

the issue'").

> The rationalization for, and use of, the remittitur is well established as a device employed when the trial judge finds that a decision of the jury is clearly unsupported and/or excessive. *Kazan v. Wolinski,* 721 F.2d 911 (3d Cir. 1983); *Keystone Floor Products Co., Inc. v. Beattie Manufacturing Co.,* 432 F.Supp. 869 (E.D.Pa. 1977). Its use clearly falls within the discretion of the trial judge, whose decision cannot be disturbed by [the Circuit] court absent a manifest abuse of discretion. *Murray v. Fairbanks Morse,* 610 F.2d 149 (3d Cir. 1979); *Edynak v. Atlantic Shipping, Inc. CIE. Chambon,* 562 F.2d 215 (3d Cir. 1977). The district judge is in the best position to evaluate the evidence presented and determine whether or not the jury has come to a rationally based conclusion. *Murray,* 610 F.2d at 152-53.

*Spence*, 806 F.2d at 1201.

When a Court reduces a jury award because it believes the amount of the verdict is

against the weight of the evidence, it must afford the plaintiff the option of a new trial.

*Cortez v. Trans Union, LLC*, 617 F.3d 688, 716 (3d Cir. 2010). However, the district court

may limit the new trial to one limited solely to the issue of damages if "it clearly appears that

the issue to be retried is so distinct and separable from the others that a trial of it alone may

be had without injustice." *Gasoline Prods. Co. v. Champlin Refining Co.*, 283 U.S. 494, 500, 51 S.Ct. 513, 75 L.Ed. 1188 (1931); *see also* 1 Moore's Federal Rules Pamphlet § 59.3(5)(a) (Matthew Bender 2015) (A district court may grant a new trial on the issue of damages alone if: "(1) the court finds that the jury's verdict has properly determined the issue of liability; and (2) the issues of liability and damages are not inextricably interwoven.").

As previously explained, here, the plaintiff failed to produce *any* evidence as to Wright's past medical expenses. Therefore, it is without question that the jury's verdict as to this category of damages was purely speculative and there was no rational basis in the record for the award of $125,000.00. Despite the fact that Defendants waived any objection to the category of past medical damages being submitted to the jury, the Court finds that the jury's award is so excessive and beyond reasonable grounds that remittitur of this award is necessary. In light of the complete absence of evidence, the Court cannot simply reduce the award, but rather must vacate it in its entirety.

For the reasons previously discussed in evaluating Defendants' Rule 59(e) motion, the Court will deny Defendants' motion for a new trial on damages as to the jury's award of future medical expenses, past lost earnings, and future lost earning capacity. The Court will deny Defendants' motion for a new trial on damages with respect to past medical expenses conditioned upon Plaintiff's filing of an acceptance of a remittitur of damages. Should Plaintiff not consent, a new trial only as to Plaintiff's past medical expenses will be held.

## V. Conclusion

For the foregoing reasons, the Court will grant in part and deny in part the Post-Trial Motions of Defendants John Cacciutti and Terry Cacciutti (Doc. 164). A separate Order follows.


Robert D. Mariani
United States District Judge